UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPTAIN TERRY MORRIS, USN<br><br>          Plaintiff<br>   v.<br><br>The Honorable CARLOS DEL TORO<br>in his official capacity as the<br>Secretary of the Navy<br>1200 Navy Pentagon<br>Washington, DC 20310-1200<br><br>The Honorable LLOYD J. AUSTIN, III,<br>in his official capacity as the<br>Secretary of Defense<br>1000 Defense Pentagon<br>Washington, DC 20310-1000<br><br>UNITED STATES NAVY<br>1200 Navy Pentagon<br>Washington, DC 20350-2000<br><br>          Defendants | Case No.:<br><br>COMPLAINT FOR COMPELLING PRODUCTION OF AGENCY RECORDS PURSUANT TO THE FREEDOM OF INFORMATION ACT |

**COMPLAINT TO COMPEL PRODUCTION OF AGENCY RECORDS PURSUANT TO THE FREEDOM OF INFORMATION ACT**

In 2016, following a heated argument concerning Plaintiff Captain (ret.) Terry Morris ("Capt. Morris") alleged failure to procure her a new position, Ms. Maria Kurta ("Ms. Kurta") levied sexual harassment allegations against him. Her husband, Rear Admiral (ret.) Anthony Kurta ("RADM Kurta"), then the Under Secretary of Defense (Personnel and Readiness), immediately sought to intervene and to influence both the investigation and the proceedings. This resulted in a Board of Inquiry (BOI) which, despite a complete lack of corroborating

evidence, and massive legal errors concerning unlawful command influence and *ex parte* discussions with a legal advisor, held that Plaintiff should be separated from the Navy, with an honorable characterization of service and his current rank of O-6 (Captain).  Commander, Naval District Washington, Director of the Navy Staff (General Court Marshal Convening Authority), Commander, Naval Personnel Command and the Under Secretary of the Navy for Manpower and Reserve Affairs all concurred with both the characterization and retirement grade recommendation. Yet, the errors continued. Ms. Kurta was permitted to add additional testimony to the record which was considered by the Secretary of the Navy, without opportunity for cross-examination or response. In 2018, more than 2 years after the initial allegations were filed, the Secretary of the Navy, Richard Spencer ("SECNAV Spencer"), a colleague of RADM Kurta, rejected the BOI, Commander, Naval District Washington DC, Director of the Navy Staff and Commander, Naval Personnel Command's recommendations, 6 Navy Flag Officers and the Under Secretary of the Navy, and instead chose to discharge Plaintiff with a statement of unsatisfactory conduct included in his DD214 and at a lower paygrade. Plaintiff's 31 years of honorable and decorated service thus ended under this wrongful cloud.

It is clear that SECNAV Spencer came to this decision based upon communications, information, and potentially even alleged evidence that was not provided to the Plaintiff, legal counsel for the Plaintiff, or any of the 5 reviewers of the case. Plaintiff is suing under FOIA in order to receive this alleged evidence and information, or a description as allowable within the guidelines of the FOIA. Absent this potential additional evidence provided to SECNAV, to include email, printed material, meetings and telephone conversations, there are compelling reasons to believe that SECNAV Spencer punished a career officer who ascended from E-1 to Captain (O-6) without cause. Ms. Kurta, through her husband RADM Kurta, clearly had

substantial access and opportunity to wield unlawful command influence over the proceedings, including over SECNAV Spencer, and the Kurtas even admitted to using it. The communications between the parties concerning Plaintiff's matter will determine to what extent they did, beyond just the incidents they have already admitted to.

Plaintiff now seeks to correct his records and undo this injustice, but the Navy has acted to protect the backchannel communications involved. On October 7, 2019, Plaintiff requested a that the Board for Correction of Naval Records review his separation and correct the injustice done to him. In June of 2020, Plaintiff filed a FOIA request specifically seeking all emails sent to, and received by, a list of departments and individuals concerning both him, and his investigation, subsequent proceedings, and separation. The Navy, in its responses dated November 2020 (first release) and March 2021 (second release), did not indicate that it had found any emails concerning the Plaintiff, nor did it release any to him, or state why it did not release the emails to him. Given the situation, and the significant evidence, on the record, of RADM Kurta's attempts to interfere with the proceedings, such an alleged lack of emails strains credulity.

Plaintiff now brings suit, pursuant to the Freedom of Information Act, to compel the Navy to search for the emails requested and to produce them to the Plaintiff. Any American citizen has a right to access those emails pursuant to FOIA. However, the context of Plaintiff's situation makes the Navy's inaction particularly egregious. Powerful civilian Defense Department officials sought to ensure that Plaintiff was punished for actions he did not commit, and now the Navy is seeking to protect them by hiding the evidence of their misconduct. This injustice cannot be allowed to stand.

**I.      JURISDICTION AND VENUE**

1. This Court has jurisdiction and venue pursuant to 5 U.S.C. § 552(a)(4)(B), which grants jurisdiction to the District Court for the District of Columbia to hear all complaints to compel production, under FOIA, of requested records improperly withheld from the complainant.

## II. THE PARTIES

2. Plaintiff Terry Morris is a retired Captain (O-6) in the United States Navy.

3. Defendant Carlos Del Toro acts on behalf of the United States of America in his official capacity as the Secretary of the Navy.

4. Defendant Lloyd J. Austin, III, acts on behalf of the United States of America in his official capacity as the Secretary of the Defense.

5. Defendant United States Navy has responsibility for the administration, control, and operation of the United States Navy ("USN").

## III. STATEMENT OF THE FACTS

6. Plaintiff is a decorated retired U.S. Navy Captain (O-6) who served in the Navy for 35 years, rising from Seaman Recruit, E-1, to Captain O-6, he twice deployed in command of squadrons and a Navy Air Wing, and has more than 340 combat flight hours. Exhibit 1, Awards and Medals of Captain Morris.

7. Plaintiff was assigned to the Chief of Naval Operations Executive Panel ("CNO N00K").

8. The CNO N00K was a small office which was then in the process of being dissolved by the Department of the Navy.

9. Ms. Kurta was a civilian employee of the Navy in CNO N00K at the time of its dissolution process.

10. She is married to RADM Kurta, a retired U.S. Navy Rear Admiral then employed as the Under Secretary of Defense for Personnel and Readiness.

11. RADM Kurta had previously served as the Director of Navy Flag Officer Management and Development.

12. Ms. Kurta and Plaintiff, in June of 2016, had a heated argument concerning Plaintiff's alleged failure to procure her a follow-on civilian position for after the office was dissolved.

13. Following this heated argument, in June of 2016, Ms. Kurta alleged to Dr. Maren Leed, an individual under whom she was seeking a position as an executive assistant, that Plaintiff had sexually harassed her.

14. Ms. Kurta alleged that Plaintiff had engaged in extensive sexual harassment over a long period of time, allegedly touching on her shoulders, legs, and back, and had allegedly once tugged on the inside of her paints' waistline while commenting on her weight loss.

15. Dr. Leed reported these allegations to the Vice Chief of Naval Operations, which resulted in an investigation by NCIS into Plaintiff and his command tenure at CNO N00K.

16. Immediately following her stating of the allegations to Dr. Leed, she received the position she had sought as an executive assistant for her, despite the position not existing at the time.

17. This investigation also investigated alleged sexual harassment by Plaintiff of Ms. Stella Murcia, who alleged that Plaintiff had grazed her right breast while passing her during a crowded fire drill investigation.

18. The investigation was commenced on July 25, 2016 and found no directly corroborating evidence for Ms. Kurta's allegations. Exhibit 2, Records from NCIS Investigation.

19. This lack of evidence was reinforced by the small nature of the office and limited number of personnel, which meant that all the personnel involved were working in close contact on a day-to-day basis. *Id.*

20. Despite this close contact and Plaintiff's alleged extensive and long running sexual harassment, none of the interviewed personnel reported ever seeing any evidence of it. *Id.*

21. In addition, RADM Kurta, as Under Secretary of Defense for Personnel and Readiness, issued DoD Directive 6495.01, which required any personnel who had been informed of sexual harassment or assault to immediately report those violations of the UCMJ.

22. Ms. Kurta allegedly told RADM Kurta about what happened, yet RADM Kurta never reported any alleged violations, which his own office had declared he was under a mandatory duty to do.

23. Nor did Ms. Kurta ever file a Sexual Assault Prevention Response (SAPR) report to protect herself from further harm when the alleged harassment occurred, and she did not report the alleged incidents to NCIS either.

24. There is no record of RADM Kurta filing a SAPR report either.

25. In short, the first time the allegations ever came out was after the dispute between Ms. Kurta and Plaintiff concerning his alleged failure to obtain a new post for Ms. Kurta in the face of the impending closure of the office.

26. RADM Kurta became directly involved in the investigation, with one of the NCIS interviews of Ms. Kurta occurring in his Pentagon office while he was present. Exhibit 17, NCIS Interview Report dated August 25, 2016.

27. As the then Under Secretary of Defense for Personnel and Readiness, RADM Kurta had direct authority for advising the Secretary of Defense on recruiting and career development, granting him immense influence over DoD personnel decisions and career tracks, including for NCIS personnel.

28. Despite the immense influence RADM Kurta wielded over the NCIS personnel conducting the investigation, they still found troubling contradictions in Ms. Kurta's testimony.

29. In the investigation she stated that she called her former supervisor on the day the alleged waistband incident occurred, but her former supervisor told NCIS that the call occurred months later, around the same time as her heated argument with Plaintiff.

30. Despite the lack of corroborating evidence, and the serious concerns as to Ms. Kurta's credibility, Plaintiff was offered, and refused, non-judicial punishment on December 12, 2016. Exhibit 3, Notification of Non-Judicial Punishment.

31. Despite having yet to undergo any criminal or administrative proceedings, Plaintiff was detached for cause on March 31, 2017.

32. Despite Plaintiff refusing NJP, no general court-martial was convened, instead the Navy initiated a Board of Inquiry on the matter in April of 2017. Exhibit 4, Notification of BOI dated April 17, 2017.

33. NJP is determined on the preponderance of the evidence, while general court-martials are on the beyond a reasonable doubt standard; Boards of Inquiry are on the preponderance of the evidence standard.

34. RADM Kurta not only interfered with the investigation, but he also interfered with the BOI.

35. Ms. Kurta testified that RADM Kurta expressed a clear desire to influence the process by contacting the Chief of Naval Operations, and later influenced the process by referring to Plaintiff as a "sexual predator" in a phone call with his personnel friend, the then Vice Chief of Naval Operations. Exhibit 5, NCIS Interview with Ms. Kurta dated July 13, 2016.

36. The VCNO was in the direct line of command of the members of Plaintiff's BOI.

37. RADM Kurta, who wielded significant influence over the careers of the officers sitting on the Board of Inquiry, also sat in on the BOI proceedings, the only government official to do so. Exhibit 6, Letter of Deficiency dated September 8, 2017.

38. Plaintiff, through his counsel, raised the issue of unlawful command influence to the BOI, who dismissed the objection on the apparent grounds that a "spouse of a complaining witness" was exempt from the rules of UCI. Exhibit 15, Response to Letter of Deficiency dated September 28, 2017.

39. There is obviously no such exception to the rules governing UCI.

40. The Board also claimed that there was no UCI because there was no direct evidence in the record that RDML Kurta influenced the outcome of the Board, which was an overly narrow application of the rules governing UCI, given his wider influence in the investigatory process and the decision to convene a BOI in the first place. *Id.*

41. Beyond unlawful command interference, there were many other serious errors committed by the Board of Inquiry.

42. The BOI committed a prejudicial legal error by consulting with the legal advisor without the presence of either the Plaintiff or his counsel. Exhibit 6; Exhibit 16, Email from Legal Advisor to Counsel for Capt. Morris dated August 14, 2017.

43. Participation of the legal advisor in any closed session of the Board is specifically banned under SECNAVINST 1920.6c.

44. The Board stunningly claimed that this was not a prejudicial error because they provided a post-facto record of the *ex parte* discussions, despite the serious substance of the issues discussed *ex parte* and Plaintiff's inability to represent his interests during said discussions. Exhibit 15.

45. The Board also improperly permitted Ms. Kurta to supplement her testimony without questioning under oath, six months after the Board hearing, through a victim impact statement which far exceeded the scope of what the statement was supposed to contain.

46. In her statement, she perfected her testimony, without being subject to further cross examination, by making claims which papered over her contradictory statements under oath during examination at the hearing.

47. She also used her statement to submit additional matters for the Secretary of the Navy to consider, without any chance for Plaintiff to respond.

48. Yet again, the Board of Inquiry had violated the binding rules governing its proceedings and permitted prejudicial materials to be entered without Plaintiff having an opportunity to represent his interests or respond.

49. After having overridden Plaintiff's objection to these massive due process violations, the BOI issued its findings on August 11, 2017. Exhibit 7, BOI findings dated August 22, 2017.

50. The Board of Inquiry found Ms. Murcia's complaint to be completely unsubstantiated. *Id.*

51. By contrast, despite the complete lack of corroborating evidence, the clear bias of Ms. Kurta, the credibility concerns found in the NCIS investigation, and overwhelming character evidence submitted on behalf of the Plaintiff, the BOI found Ms. Kurta's allegations to be substantiated by a preponderance of the evidence. *Id.*

52. On these grounds, the BOI found that Plaintiff had violated UCMJ 92 via misconduct and also found that he had performed below standards by failing to conform to prescribed standards of military deportment. *Id.*

53. Based on these findings, it recommended his separation with an honorable characterization and at his rank of O-6. *Id.*

54. Both Naval District Washington and the Naval Personnel Command concurred that Plaintiff's paygrade on discharge should be O-6, Captain, and his characterization should be Honorable. Exhibit 9, Memorandum from Deputy Chief of Naval Personnel to Assistant Secretary of the Navy (Manpower and Reserve Affairs) dated December 11, 2017.

55. Plaintiff chose not to contest his separation under honorable conditions at O-6, because he had already submitted a retirement request in 2016, has been diagnosed with aggressive prostate cancer in 2017, and wished wanted to focus recovery from said cancer. Exhibit 8, Response to Board of Inquiry decision dated March 6, 2018.

56. On May 29, 2018, Secretary of the Navy at the time, Richard Spencer, a colleague of RDML Kurta, departed from the BOI, Naval District, and Naval Personnel Command's recommendations and instead ordered that Plaintiff's separation code be classified as unacceptable conduct, and that he be reduced in paygrade on discharge to O-5. Exhibit 18, Separation Determination of Secretary of the Navy Richard Spencer.

57. Plaintiff filed his application to the Board for the Correction of Naval Records ("BCNR") on October 7, 2019. Exhibit 10, Plaintiff's Application to the BCNR.

58. On May 5, 2020, a six-month extension to permit a full response to the advisory opinion in Plaintiff's BCNR application was requested. Exhibit 11, BCNR Close Out dated June 21, 2020.

59. The BCNR, on June 21, 2020, instead administratively closed the matter, without action, in order to permit Plaintiff to engage in a further factual inquiry. *Id.*

60. On June 26, 2020, Plaintiff, through counsel, filed a FOIA request to compel production of records by the Department of the Navy. Exhibit 12, Plaintiff's FOIA Request dated June 26, 2020.

61. This request specifically defined document with "the broadest possible meaning, to include all notes, memoranda, e-mails and other electronic messages, audio or videotape recordings, and any other data compilations, in whatever form. *Id.*

62. Under FOIA, Plaintiff requested any and all documents the Navy maintained on Capt. Morris, including, but not limited to, any investigations into alleged misconduct and all documentation sent or received regarding Plaintiff to and/or from the following offices between October 2015-July 2018:

    a. Chief of Naval Operations;
    b. Secretary of the Navy;
    c. Vice Chief of Naval Operations;
    d. Naval District Washington;
    e. Naval Personnel Command;
    f. Assistant Secretary of the Navy (Manpower and Reserve Affairs);
    g. Under Secretary of Defense for Personnel and Readiness;
    h. Director of Naval Staff; and
    i. Naval Personnel Command.

    *Id.*

63. In addition, Plaintiff requested a copy of any and all documents the Navy maintained on Plaintiff which were sent or received to and/or from the following personnel between October 2015-July 2018:

    a. Maria Kurta- Civ;
    b. Anthony Kurta- Civ;
    c. Estella Murcia- Civ;
    d. Maren Leed- Civ;
    e. Susan Adams- Civ;
    f. Capt. Sam Paparo;
    g. Capt. Will Triplett;
    h. Capt. John Springett;
    i. Capt. Sharon Ruest;
    j. LCdr. James Raymond;
    k. Cdr. Christopher Mullen;
    l. LCdr. Shelby Nikitin;
    m. Cdr. Curt Larson;
    n. RDML Johnny Wolfe;

      o. RDML Moises Deltoro; and

      p. RDML Francis Morley.

*Id.*

64. For the ease of all parties involved moving forward, parties a-i under ¶8 will be collectively referred to as the "Organizational Targets", parties a-p under ¶9 as "Individual Targets", and the two categories combined as "Target Parties."

65. On November 19, 2020, the FOIA request was partially answered by the Bureau of Naval Personnel, which submitted Plaintiff's personnel records, including the record of his Board of Inquiry ("BOI") proceedings. Exhibit 13, Department of the Navy FOIA Response dated November 19, 2020.

66. On March 25, 2021, the Department of the Navy submitted its response to Plaintiff's FOIA request, granting it in part and denying it in part, and submitting additional documentation from the investigation and BOI proceedings. Exhibit 14, Department of the Navy FOIA Response dated March 25, 2021.

67. However, it denied production of an additional 10 records, responsive to Plaintiff's request, on the grounds that they were protected under the 5 U.S.C. § 552(b)(5) deliberate process privilege as drafts and/or proposals of documents not in their final form. *Id.*

68. However, at no point did the Department of the Navy submit the most important information requested, the requested emails sent by, or received by, the Target Parties concerning Plaintiff. Exhibit 13; Exhibit 14.

69. In fact, the Department of the Navy appears to have either completely failed to search for the emails, or has hidden the results of said search, as they are never described in their FOIA Responses. *Id.*

70. The only way in which this would be otherwise is if no emails were sent between the Target Parties concerning Plaintiff, which is, at best, incredibly unlikely.

71. Given the clear evidence, *on the record via testimony*, that RADM Kurta had sought to intervene in Plaintiff's proceedings, and the significant circumstantial evidence of his handiwork, the email conversations concerning the investigation into Plaintiff's BOI and the proceedings are critical for determining the scope of his unlawful command influence. Exhibit 5.

72. This is reinforced by Secretary of the Navy's, a colleague of RADM Kurta, decision to go against the recommended characterization of separation, and Plaintiff's paygrade on separation. Exhibit 18.

## ARGUMENT

**Claim for Relief:**
**Freedom of Information Act, 5 U.S.C. § 552**

**Claim 1:** **The Department of the Navy violated the Freedom of Information Act by failing to search for email documentation, despite being specifically requested to by the Plaintiff.**

73. The Freedom of Information Act, at 5 U.S.C. § 552(a)(3)(A), requires agencies to promptly make records available to any person who requests them and reasonably describes the record.

74. Federal agencies bear the burden of proving that they have complied with FOIA obligations. 5 U.S.C.§ 552(a)(4)(B); *see also MuckRock, LLC v. CIA*, 300 F. Supp. 3d 108 at 118 (D.D.C. 2018).

75. This includes proving that the search performed was adequate, which is determined under a "reasonableness" standard. *MuckRock*, 300 F. Supp. 3d at 119.

76. In particular, the methodology of the search must be reasonable. *Id.* (*citing Oglesby v. U.S. Dep't. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

77. On June 26, 2020, Plaintiff, through counsel, specifically requested all documentation regarding Plaintiff sent or received by the Target Parties between October 2015 and July 2018. Exhibit X2.

78. This request specifically identified all notes, memoranda, *and emails*, among other definitions of "document." *Id.*

79. This meant that Plaintiff clearly reasonably described one tranche of the records requested, all emails between the Target Parties concerning Plaintiff sent between October 2015 and July 2018. *See id.*; *see* 5 U.S.C. § 552(a)(3)(A).

80. The Department of the Navy, under 5 U.S.C. § 552(a)(3)(A) was thus required to adequately search for these records and then either produce them, or to detail a reason as to why they could not be produced. *Id.*

81. Instead, the Department of the Navy clear did not search for any email documentation, as their response states that the only other documentation found, other than that already sent to the Plaintiff, was inter, or intra, agency draft documentation, created as part of the deliberative process. *See* Exhibit 14.

82. For the contrary to be true, that the Department of the Navy did search for email documentation and found none, would require that none of the Target Parties shared email communications concerning Plaintiff between October 2015 and July 2018.

83. This is obviously ridiculous.

84. The Department of the Navy either did not perform a search as required under 5 U.S.C. § 552(a)(3)(A), did not perform a methodologically adequate search, or did perform a proper search and instead decided to hide the results from the plaintiff.

85. The failure to find any emails pertaining to the Plaintiff is clear evidence that the Department of the Navy did not make a search in good faith.

86. Plaintiff has a clear right to these emails regardless of the context of this matter, but this failure to search, or attempt to hide, becomes particularly egregious when the context of the unlawful command interference in his BOI is considered.

87. Given this, the Court should issue an order compelling the Navy to perform an adequate search and to reveal the results of said search. 5 U.S.C. § 552(a)(4)(B).

## **Conclusion**

WHEREFORE, the Plaintiff humbly requests that this Court issue an order:

1) Ordering the Department of the Navy to search its records for all emails pertaining to Plaintiff sent between the Target Parties, as defined above, between October 2015 and July 2018;

2) Ordering the Department of the Navy to produce all such records; and

3) Ordering that this production occur within three months; and

4) Staying these proceedings until such production has occurred.

In addition, Plaintiff notes to the Court and to the Defendant that, should he prevail, he will file a motion for the attorney's fees incurred, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

Respectfully submitted,

*/s/DavidP.Sheldon*

David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
100 M. St. SE, Suite 600

                                              Washington, DC 20003
                                              Tel: 202.546.9575
                                              Fax: 202.546.0135
                                              *Attorney for Petitioner*

Dated: January 14, 2022.