1910<br>
8 Sep 17

From:  CDR Christopher M. Williams, JAGC, USN, Counsel for the Respondent
To:    Commander, Navy Personnel Command (PERS-834)
Via:   Commandant, Naval District Washington

Subj:  LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

Ref:   (a) Authenticated Record of Proceedings of 22 Aug 17
       (b) SECNAVINST 1920.6C

Encl:  (1) *USA Today* article "Bad Santa" of 7 Sep 17

1. On 11 August 2017, a Board of Inquiry recommended that CAPT Terry S. Morris, USN, should be administratively separated from the Naval Service on the basis of misconduct and substandard performance of duty for the alleged sexual harassment of Mrs. Maria Kurta. The board further recommended that CAPT Morris should retire in the grade of Captain (O-6) with an Honorable characterization of service. As a separate matter, the board determined that the evidence did not support a finding that CAPT Morris had sexually harassed Ms. Stella Murcia. Reference (a) is the authenticated record of the board proceedings.

2. As outlined below, multiple errors in the processing of his case effectively denied CAPT Morris his right to the fair and impartial hearing required by reference (b). Through counsel, CAPT Morris respectfully requests that he be allowed to retire voluntarily, or in the alternative, that a new Board of Inquiry be convened to consider his case.

**3. The board disregarded the plain language of reference (b) by allowing the legal advisor to participate in a closed session of the board. This error was prejudicial to CAPT Morris, rendering the board's findings illegal and void.**

   a. "A fundamental tenet of our legal system is that the government must follow its own regulations. Actions by an agency of the executive branch in violation of its own regulations are illegal and void." *Lewis v. United States*, 114 Fed. Cl. 682 (Ct. Fed. Cl. 2014)(Department of the Navy failed to accord respondent his right to be present at Board of Inquiry); *VanderMolen v. Stetson*, 571 F. 2d 617, 624 (D.C. Cir. 1977)(voiding Air Force proceeding because Air Force failed to follow its own regulations); *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)("[E]ven when granted unfettered discretion by Congress[,] the military must abide by its own procedural regulations should it choose to promulgate them."). When the Department of the Navy violates the Administrative Procedures Act by failing to abide by its own mandatory regulations, the respondent will be entitled to a new board of inquiry. *See, e.g., Brezler v. Mills*, 220 F. Supp. 3d 303 (E.D.N.Y. 2016).

   b. In *Wisotsky v. United States*, the Court of Federal Claims voided the respondent's involuntary discharge from the military and ordered that he be restored to active duty where the composition of the board failed to include an officer of the same competitive category as the

Subj:   LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

respondent, as explicitly required by an earlier version of reference (b).  69 Fed. Cl. 299, 309-11 (Ct. Fed. Cl. 2006)(although member processed for misconduct, harmless error review inappropriate when substandard performance was a separate basis for separation).

      c.  Reference (b) explicitly and plainly states that "[t]he legal advisor **shall not** participate in closed sessions of the Board."  Enclosure (8), para. 4.k. (emphasis added).  Reference (b) also guarantees the respondent the right to be present at all open proceedings of the board.  Enclosure (8), para. 6.n.  Finally, the respondent has the right to submit a statement in rebuttal to the board's findings and recommendations for consideration by the separation authority.  Enclosure (8), para. 6.m.

      d.  Reference (a) indicates that the board closed for deliberations at 1631 hours and did not reopen until 1834 hours, at which time the senior member announced the board's findings and adjourned the board.  Enclosure (1), p. 7.  Just before adjourning the board, the senior member stated for the record that during the closed session the board had consulted with the legal advisor on multiple issues.  Reference (a) provides an inaccurate summary of these issues.  According to the audio recording of the board proceedings, the senior member stated that the board sought "clarification" on the following points: (1) limitations on the respondent's unsworn testimony, (2) what is involved in the specification of substandard performance, (3) the legal path from nonjudicial punishment to the board, and (4) separation rank policy.  Neither CAPT Morris nor his counsel were present for the board's consultation with the legal advisor, and no other notice of the consultation had been provided to CAPT Morris or his counsel.  After making this statement, the senior member immediately adjourned the board.

      e.  The board's consultation with the legal advisor during a closed session of the board is a clear and egregious violation of the procedural requirements set forth in reference (b).  This was not a technical violation or a harmless error.  The board's actions denied CAPT Morris his substantive right to be present at what should have been an open proceeding of the board.  Reference (a) misrepresents and minimizes the nature of the board's consultation with the legal advisor.  The board's consultation with the legal advisor was not limited to questions of "policy and procedure," nor was the information he provided to the board members limited to merely directing them to "the appropriate policies."  Enclosure (1), p. 7.  The audio recording of the board proceedings makes clear that the board had questions about the facts underlying the specification of substandard performance and that the board also "confirmed the legal path" that CAPT Morris's case took in arriving before the board—an obvious reference to counsel for the respondent's closing argument that there had been no nonjudicial punishment or other adjudication of this case prior to the board.  CAPT Morris had a right to be present to hear this discussion and potentially challenge the accuracy of the information being provided by the legal advisor.  Indeed, because CAPT Morris was not afforded his right to be present, he is effectively unable to rebut the information the legal advisor provided to the board, which now operates to the prejudice of his right to submit a statement in rebuttal to the board's findings and recommendations for consideration by the separation authority.  This administrative board, acting on behalf of the Navy, violated a Navy procedural regulation to the detriment of the respondent.  Accordingly, the board's findings are illegal and void, and a new board must be ordered.

Subj:  LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

**4. The involvement of the accuser's husband, a senior Department of Defense official, in the processing of this case constitutes unlawful command influence.**

    a.  Unlawful command influence (UCI) is the improper use, or perception of use, of superior authority to interfere with an administrative process and has consistently been called "the mortal enemy of military justice." *United States v. Gore*, 60 M.J. 178 (C.A.A.F. 2004). Although generally applied to military justice proceedings, the principle of UCI also applies to military administrative hearings. *N.G. v. United States*, 94 Fed. Cl. 375 (C.F.C. 2010)(citing *Werking v. United States*, 4 Cl. Ct. 101, 105 (1983)).  The mere appearance of UCI can be just as devastating to public perception about the fairness of the system, and "any circumstance which gives even the appearance of improperly influencing the court-martial proceeding against the accused must be condemned." *United States v. Hawthorne*, 22 C.M.R. 83, 87 (C.M.A. 1956). Military courts have also found error when a higher authority is physically present at the proceedings.  *See, e.g., United States v. Harvey*, 64 M.J. 13 (C.A.A.F. 2006)(presence of convening authority in the courts-martial may raise issues); *United States v. Rosser*, 6 M.J. 267 (C.M.A. 1979)(military judge abused his discretion in denying mistrial where accuser's company commander's presence throughout proceeding was "ubiquitous.").

    b.  Mrs. Kurta's husband is Mr. Anthony Kurta, currently performing the duties of Under Secretary of Defense for Personnel and Readiness.  Mr. Kurta was the first person Mrs. Kurta told about the alleged sexual harassment by CAPT Morris, at which point Mr. Kurta threatened to call the CNO.  Mrs. Kurta claimed in her testimony at the board that he did not do so only at her request.  However, when the VCNO learned about Mrs. Kurta's allegation several months later, Mr. Kurta told him that CAPT Morris was a "sexual predator."  Reference (a), Enclosure (3), Exhibit G, p. 50.  The VCNO immediately removed CAPT Morris from his position and convened a preliminary inquiry into Mrs. Kurta's allegation against CAPT Morris.  When the matter was ultimately referred to NCIS for investigation, Mr. Kurta allowed his wife's interview to occur in his office and was present for the entire interview.  He was also physically present for his wife's testimony at the board, over the objection of counsel for the respondent, a significant fact that is inexplicably omitted from reference (a).  Mrs. Kurta stated that she had asked her husband to attend these events for moral support.  Notably, Mrs. Kurta had initially declined the services of a victim advocate, but acknowledged during her testimony that one had been assigned to her the week prior to the board.  Reference (a), Enclosure (3), Exhibit G, p. 4.

    c.  Mr. Kurta is the most senior official in the Department of Defense responsible for personnel policy.  In that capacity, he is the signature authority for the Department of Defense instruction that reference (b) implements.  His involvement at any stage of this process is highly inappropriate and prejudicial to CAPT Morris.  Similar to the case in *Rosser*, Mr. Kurta's involvement was pervasive and anything but harmless.  Mr. Kurta's conversation with the VCNO provided credibility for his wife's allegation against CAPT Morris, as evidenced by the timing of CAPT Morris's reassignment and the subsequent preliminary inquiry.  His presence during her NCIS interview, by itself highly unusual, and the fact that the interview was held *in his office at the Pentagon* both provided credibility for her statement to NCIS.  His presence during her board testimony again provided her with credibility before the board.  Mrs. Kurta admits that she wanted him present at these events, but claims that it was for moral support.  This makes no sense, as she had affirmatively declined the services of a victim advocate prior to her

Subj:   LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

NCIS interview and had an assigned victim advocate at the time of her board testimony. A victim advocate should have been sufficient support for the wife of one of the most senior officials in the Department of Defense. It is more likely that Mrs. Kurta's repeated efforts to involve her husband were a calculated and apparently successful effort to influence the process by lending credibility to her allegation against CAPT Morris. Mr. Kurta should have avoided taking any action that would create even the appearance of UCI. By failing to do so, he has irreversibly tainted the processing of this case.

      d.  The apparent result of Mr. Kurta's involvement in this case is that CAPT Morris was treated quite differently than another senior officer on the OPNAV staff who was accused of sexual harassment just months later. According to a recent article in *USA Today*, provided as enclosure (1), CDR Chris Servello, then serving as the CNO's spokesman, was accused of sexual harassment by at least two junior officers and a civilian employee. The allegations against CDR Servello included inappropriate physical contact. After a command investigation concluded that CDR Servello had engaged in "predatory behavior" toward multiple junior officers, the case was referred to NCIS for investigation. Despite these facts, CDR Servello was allowed to remain in his highly visible position *for eight months* while the CNO considered the disposition of his case. In enclosure (1), the CNO states that before deciding to remove CDR Servello from his position, "he waited until the legal process played out to protect Servello and his alleged victims." CAPT Morris did not receive the same courtesy or protection. Based solely on the allegations against him, which were less substantial than the allegations against CDR Servello, he was immediately removed from his position on the OPNAV staff and reassigned to Naval District Washington. The command investigation into the allegations against him was not allowed to conclude before the matter was referred to NCIS, denying CAPT Morris the benefit of a thorough inquiry into Mrs. Kurta's allegation of a poor command climate. Had the command investigation been allowed to proceed, YN1 Brandon Boggan would likely have been interviewed, providing relevant information about Mrs. Kurta's credibility as an accuser. Finally, the disposition of CAPT Morris's case was ultimately considered not by the CNO, but by an officer who was not familiar with him or the other parties involved in the case. As a result, CAPT Morris was offered nonjudicial punishment and processed for administrative separation when he refused. By contrast, according to enclosure (1), CDR Servello was simply reassigned and administratively counseled, and the CNO now "considers the Servello matter closed." The difference in how these two officers were treated is so outrageous that the only possible explanation is Mr. Kurta's involvement in this case. Because the handling of this case was tainted from the start by both actual and apparent UCI, this error can only be cured by terminating the separation processing against CAPT Morris so that his pending voluntary retirement request may be approved.

**5.  CAPT Morris was denied access to relevant evidence in violation of the procedural rights afforded to him by reference (b).**

      a.  Reference (b) states that the respondent shall be given "[f]ull access to, and copies of, records relevant to the case[.]" Enclosure (8), para. 6.d. In *Brezler*, a federal district court vacated a Board of Inquiry's findings and recommendations when it determined that the Navy had failed to provide the respondent access to relevant documents that would have permitted him to fully and fairly explore issues and complete the administrative record. The Navy, like any

4

Subj:   LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

other agency, must comply with its own binding rules. *Brezler*, 220 F. Supp. 3d at 326 (quoting *Smith v. Resor*, 406 F.2d 141, 145 (2d. Cir. 1969).

b. On 5 July 2017, CAPT Morris requested access to relevant evidence pursuant to reference (b). Specifically, he requested copies of performance evaluations and disciplinary records for any alleged victim in this case. Enclosure (3), Exhibit F. At the board, Mrs. Kurta testified that she had been employed by the Department of the Navy for approximately 10 years. However, as counsel for the respondent noted at the board, CAPT Morris was provided with only one annual performance evaluation in response to his request, and no explanation for why the other performance evaluations were not provided.

c. The requested evidence was relevant to both Mrs. Kurta's credibility and the argument advanced by counsel for the respondent at the board that Mrs. Kurta had fabricated the sexual assault allegation against CAPT Morris because their office was being dissolved and she was worried about her continued employment. Here, similar to the case in *Brezler*, the Navy failed to provide CAPT Morris with relevant evidence that would have allowed a full and fair exploration of his accuser's credibility. Mrs. Kurta refused to be interviewed by CAPT Morris's defense team prior to the board, and at the board the senior member was unwilling to allow counsel for the respondent to question Mrs. Kurta on matters beyond the evidence presented at the board. Had CAPT Morris been provided with "full access" to his accuser's personnel records, as required by reference (b), he may have been able to discover facts that could be used to impeach her credibility during her testimony at the board. Accordingly, CAPT Morris must be provided with full access to the requested records and the opportunity to present them before a new board.

**6. The board's findings and recommendations were not supported by substantial evidence.**

a. Under the Administrative Procedures Act, a court may review a military discharge decision to determine whether the decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law, regulation, or published procedure. *Crane v. Sec'y of the Army*, 92 F. Supp. 2d. 155, 165 (W.D.N.Y. 2000)(reversing Army Board of Inquiry as unsupported by substantial evidence after recorder's evidence was significantly impeached and weakened by the testimony of several witnesses); *Wade v. United States*, 126 Fed. Cl. 638 (C.F.C. 2016)("The Court is deeply troubled by the Navy's actions in discharging Mr. Wade involuntarily after 19-1/2 years of outstanding service to his country. There are so many shortcomings and inconsistencies in the administrative record that the Court is reluctant to let the Navy's ruling stand.").

b. In this case, the board's findings on misconduct and substandard performance were based entirely on Mrs. Kurta's testimony that CAPT Morris touched her inappropriately in April 2016. There were no other witnesses to this alleged misconduct, or any of the other workplace harassment she claimed had occurred repeatedly over an extended period of time, and no witness who provided testimony for the preliminary inquiry, the NCIS investigation, or the board stated that Mrs. Kurta had ever mentioned the inappropriate contact to them prior to the summer of 2016. In fact, Mrs. Kurta never formally reported the alleged sexual harassment. It was only discovered when Mrs. Kurta made the claim during a conversation with Dr. Maren Leed in June 2016. Dr. Leed then reported the alleged contact to the VCNO. Reference (a), Enclosure (3),

Subj:   LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

Exhibit G, pp. 45-47.  This is significant because at the time of this conversation, Mrs. Kurta's office was being dissolved and she was actively seeking a new Executive Assistant position within the Navy.  The conversation with Dr. Leed resulted in Mrs. Kurta's immediate reassignment to Dr. Leed's office to serve as her Executive Assistant.  YN1 Boggan's testimony at the board indicated that around the time of her conversation with Dr. Leed, Mrs. Kurta had a heated argument with CAPT Morris about her follow-on position.   Mrs. Kurta confirmed this during her testimony at the board, claiming that CAPT Morris had "tried to decide where I was going to sit."  The timing of Mrs. Kurta's allegation is strong evidence of a possible motive to fabricate a sexual harassment allegation against CAPT Morris in order to gain sympathy from Dr. Leed and prevent CAPT Morris from having any influence over her follow-on position—something she had admitted she was worried about.  Reference (a), Enclosure (3), Exhibit G, p. 33.  The highly emotional nature of her conversations with Dr. Leed and CAPT John Springett in the summer of 2016—months after the inappropriate contact had allegedly occurred—strongly suggests that her emotion was the result of anxiety over her follow-on position.  Notably, Mrs. Kurta told Dr. Leed that CAPT Morris had sexually harassed more than one woman in her office, but refused to identify the other woman in her testimony before the board.  Mrs. Kurta's testimony that CAPT Morris touched her inappropriately, standing alone, is simply not sufficient to overcome the significant evidence that her allegation was likely fabricated in order to secure a favorable follow-on position before her office was dissolved.

  c.  The board's recommendation that CAPT Morris should be administratively separated from the Naval Service is similarly without substantial evidentiary support in reference (a).  The evidence presented to the board demonstrates a 35-year career of exceptional service by CAPT Morris.  CAPT Morris served honorably both as an enlisted Sailor and as an officer.  He has deployed 10 times in the service of his nation, 6 of those in combat and 4 in command.  He has held both unit and major command.  His fitness reports show multiple top breakouts and Flag recommendations.  Two Flag Officers appeared in person at the board at personal expense to testify to the quality of his service and his personal character.  A senior Navy judge advocate testified in support of his outstanding performance in major command.  Women he had worked for and with described him as an absolute professional who fostered a climate of dignity and respect.  Similar to the case in *Wade*, this case pairs a lengthy record of outstanding service against a record rife with troubling shortcomings and inconsistencies.

**7.  The board failed to assign proper weight to the evidence because it lacked the significant experience necessary to evaluate the difficult facts of this case.**

  a.  In NAVADMIN 148/17, the CNO provided guidance regarding the responsibilities and considerations for members of officer Boards of Inquiry.  The CNO described the board process as "important work, which often requires BOI members to make difficult decisions with long-term consequences. For this reason, convening authorities must ensure that BOI members are officers of significant experience and who show exceptional judgment."

  b.  With respect to the board's recommendation on separation, NAVADMIN 148/17 states that "board members should carefully consider the individual's suitability for continued service."  That careful consideration <u>must</u> include: "a. The totality of the officer's record and assessment of his or her suitability for continued military service; b. Whether the officer can

Subj:   LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

meet rigorous and necessary standards of duty, performance, and discipline; c. Whether the officer can maintain those high standards of performance and conduct through appropriate actions that sustain the traditional concept of honorable military service; and d. Whether the officer can exercise the responsibility, fidelity, integrity, or competence required of them."

      c. The board that considered the case against CAPT Morris lacked the significant experience necessary to evaluate the difficult facts of this case. During voir dire of the board members, it was discovered that the senior member had never held command and none of the members had any experience dealing with a sexual harassment case. No member recalled ever having served on an enlisted administrative separation board (one member thought he might have served on a drug abuse board 21 years ago but was not sure), an officer Board of Inquiry, or a court-martial. While none of these facts would be grounds to challenge an individual board member, the combined effect was a board that lacked the experience necessary to handle a complex fact pattern that involved assessing the credibility and motives of various witnesses.

      d. This lack of experience was evident not only in the board's unsupported findings and recommendations, but also in their conduct of the board itself. The senior member refused to allow counsel for the respondent to probe the opinions of the members regarding why someone might make a false allegation and did not appear to understand that character letters could contain opinions, rather than just facts, when the recorder objected to one of CAPT Morris's letters. The senior member repeatedly displayed an overly restrictive view of the evidence that CAPT Morris could present to the board, sustaining objections from the recorder that prevented counsel for the respondent from exploring other allegations of sexual harassment previously made by Mrs. Kurta or eliciting testimony from character witnesses about whether they would believe CAPT Morris if he denied sexually harassing someone. The basis for the recorder's objection to the latter was that the testimony was improper character evidence. Instead of permitting counsel for the respondent to respond to the objection and articulate a basis for the relevance and materiality of the expected testimony, the senior member simply sustained the recorder's objection and directed counsel for the respondent to stop the line of questioning. Finally, the board improperly consulted with the legal advisor during a closed session and then abruptly adjourned without providing counsel for either side an opportunity to object or inquire further.

      e. The board's findings and recommendations also disregarded the compelling testimony of two Flag Officers and a senior Navy judge advocate. RDML Sam Paparo, currently Commander, Carrier Strike Group TEN, put CAPT Morris in the top 10 officers with whom he had ever served—a list that he acknowledged includes the current CNO and multiple Admirals who served as Commander, U.S. Fleet Forces Command. With respect to the allegations against CAPT Morris, he stated that "CAPT Morris did tell me that he didn't do this and I absolutely do believe him. I'd stake my own life and the lives of my children on it. . . .There is no way he could have done this." RADM(ret) Mike Manazir, incorrectly identified as an O-7 in enclosure (1) to reference (a), stated emphatically that he believed CAPT Morris "did not do these things he's been accused of." Finally, CDR Megan Smith, the current U.S. SEVENTH Fleet Judge Advocate, stated that there was "no way" CAPT Morris would have engaged in the alleged misconduct and that she would stake her "personal and professional reputation" on that. CDR Smith put CAPT Morris at the top of all officers with whom she had worked in her career, in

Subj:   LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

terms of leadership, professionalism, and integrity.  She also noted that as a senior judge advocate, she has a full appreciation for what these allegations involve and has advised commanders on many investigations dealing with the same types of charges.  A board that would recommend separation after being presented with this testimony simply lacks credibility.

**8. CAPT Morris was improperly processed for violating an instruction that had been cancelled and was not in effect at the time of his alleged misconduct.**

    a.  CAPT Morris was processed for misconduct on the basis of violating Article 92 of the Uniform Code of Military Justice, failure to obey a lawful general order or regulation.  The nonjudicial punishment report chit included with reference (a) indicates that the regulation CAPT Morris was processed for violating was SECNAVINST 5300.26D, which prohibits sexual harassment in the Navy.  However, SECNAVINST 5215.1E, signed on 28 October 2014, plainly states that "[d]irectives reaching the 7-year anniversary that are not in the revision process are self-cancelling on the date and continued use requires a full revision to the next available point number."  SECNAVINST 5300.26D was issued on 3 January 2006 and does not appear to have been revised at any point.  Accordingly, the instruction self-cancelled on 3 January 2013 and could not have been violated after that date.

    b.  The recorder attempted to cure this error at the board by offering into evidence an affidavit from a Navy official asserting that SECNAVINST 5300.26D is still a valid instruction and was not meant to be cancelled.  Reference (a), Enclosure (2), Exhibit 13.  This assertion contradicts the plain language of SECNAVINST 5215.1E and is unsupported by any legal analysis.  In short, an affidavit from an agency employee who does not have the authority to set policy does not trump the plain language of an agency's duly issued instruction or regulation.  The recorder also introduced Article 1166, U.S. Navy Regulations, which generally prohibits sexual harassment.  However, this is not the alleged misconduct that was reported to Navy Personnel Command and for which CAPT Morris was processed.

    c.  As previously stated, "[a] fundamental tenet of our legal system is that the government must follow its own regulations.  Actions by an agency of the executive branch in violation of its own regulations are illegal and void." *Lewis v. United States*, 114 Fed. Cl. 682 (Ct. Fed. Cl. 2014); *VanderMolen v. Stetson*, 571 F. 2d 617, 624 (D.C. Cir. 1977)(voiding Air Force proceeding because Air Force failed to follow its own regulations).  Processing CAPT Morris for violating a cancelled instruction is effectively illegal and void.  The affidavit provided by the recorder is contrary to the plain language of the current instruction, and thus is arbitrary, capricious, and contrary to regulation.  *See Mota v. Mukasey*, 543 F.3d 1165, 1167 (9th Cir. 2008)(stating courts are not obligated to defer to an agency's interpretation that are contrary to the plain and sensible meaning of the statute or regulation).  Attempting to change the basis for processing at the board without prior notice to CAPT Morris or the concurrence of the Show Cause Authority violates both due process and the show cause process set forth in reference (b).

9.  The cumulative effect of these errors was to deny CAPT Morris his right to the fair and impartial hearing guaranteed by reference (b).  Accordingly, CAPT Morris respectfully requests that you reject the board results and recommend termination of separation processing so he may

Subj:   LETTER OF DEFICIENCY ICO CAPT TERRY S. MORRIS, USN

be allowed to retire voluntarily.  Alternatively, CAPT Morris respectfully requests that you convene a new Board of Inquiry to consider his case.

10.  The undersigned is the point of contact for this letter and may be reached at (202) 685-5537 or christopher.m.willi2@navy.mil.  Thank you for your time and consideration on behalf of CAPT Morris.

*[signature]*

CHRISTOPHER M. WILLIAMS
